**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **BEVERLY FULLEN, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 21-4010-JAR-TJJ** |
| **CITY OF SALINA, KANSAS, et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

In this removal action, Plaintiffs Beverly Fullen, J. Matthew Fullen, and Melissa Fullen bring claims against Defendants the City of Salina, Kansas ("the City"); Saline County Sheriff Roger Soldan; officers and agents of the Saline County Sheriff's Department, including Lt. Scott Anderson and Deputy James Akin; Vanessa Cowie; and James Crowther. This matter is now before the Court on Crowther's Motion to Dismiss or for More Definite Statement (Doc. 10); a joint Motion to Dismiss (Doc. 11) filed by the City, Sheriff Soldan, Lt. Anderson, and Deputy Akin (collectively, "Salina Defendants"); and Cowie's Motion to Dismiss Plaintiffs' Petition (Doc. 14). The motions are fully briefed,[1] and the Court is prepared to rule. As explained more fully below, the Court grants in part and denies in part the Salina Defendants' motion to dismiss; grants in part and denies in part Cowie's motion to dismiss; and grants Crowther's motion to dismiss.

---

[1] Crowther did not file a reply, and the time to do so has passed. Moreover, Plaintiffs filed a one-sentence sur-reply to the motions to dismiss. *See* Doc. 27. There is no right to file a sur-reply under the Federal Rules of Civil Procedure or this Court's local rules. *See* D. Kan. R. 7.1(c). Because Plaintiffs did not seek leave of court to file their sur-reply, as required by D. Kan. Rule 15.1, the Court will not consider it.

## I.     Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[2]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but it requires more than "a sheer possibility."[3] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[4] Finally, the Court must accept the plaintiff's factual allegations as true, view those facts in the light most favorable to the plaintiff, and assess whether they give rise to a reasonable inference that the defendant is liable in light of the applicable law.[5]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all of the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[6] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[7]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[8]  "A claim has facial plausibility when the plaintiff pleads factual

---

[2] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[5] *See Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

[6] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[7] *Id.* at 678−79.

[8] *Id.* at 679.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

"The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."[10]  Here, Plaintiffs introduce new facts in their response brief that are not alleged in the Petition, including facts concerning the existence of "two warrants, each for a separate parcel of real property, issued on April 18, 2018, the day the . . . animals were seized."[11]  Because at the motion to dismiss stage the Court is limited to considering the sufficiency of the allegations contained in Plaintiff's Petition, the Court will not consider allegations or evidence outside of it.[12]

If the Court on a Rule 12(b)(6) motion looks to matters outside the pleadings, it generally must convert the motion to a Fed. R. Civ. P. 56 motion for summary judgment.[13]  However, the Court may consider documents that are referred to in the complaint if they are central to the plaintiff's claim and the parties do not dispute their authenticity.[14]  The Court may also take judicial notice of "publicly-filed records in [its] court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."[15]  But these public records "may only be considered to show their contents, not to prove the truth of the matters asserted therein."[16]

---

[9] *Id.* at 678.

[10] *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

[11] Doc. 21 at 11.

[12] *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019).

[13] Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997).

[14] *See Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007); *GFF Corp.*, 130 F.3d at 1384–85.

[15] *United States v. Ahidley*, 486 F.3d 1184, 1192 n.2 (10th Cir. 2007).

[16] *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

Here, the Court may take judicial notice of the documents attached to the Salina Defendants' reply brief: (1) Beverly Fullen's Plea Agreement and Tender of Plea of No Contest; and (2) the state-court Journal Entry and Amended Journal Entry detailing Beverly Fullen's plea and sentence.[17]   That said, the Salina Defendants rely on these public records to argue, for the first time in their reply brief, that Beverly Fullen's Fourth Amendment malicious prosecution claim under 42 U.S.C. § 1983 should be dismissed because the prosecution did not terminate in her favor.  Because the Court declines to consider issues and arguments first raised in a reply brief,[18] the Court need not consider these public records in resolving the Salina Defendants' motion to dismiss.

## II.   Factual Background

The following facts are alleged in the Petition.  In resolving the Rule 12(b)(6) motions to dismiss, the Court accepts the well-pleaded facts as true and views them in the light most favorable to Plaintiffs.[19]

Defendant the City of Salina is a political subdivision of the State of Kansas, and it operates and controls the Salina Animal Shelter.  Defendant Roger Soldan is the Sheriff of Saline County.  The Saline County Sheriff's Department operates as the law enforcement department for Saline County.  Defendant Vanessa Cowie, former Animal Services Manager for the City, was at all times relevant to this action an employee and agent of the City and the Salina Animal Shelter.  Defendant James Crowther acted individually but was also at relevant times an agent of the City and the Sheriff's Department.

---

[17] *See* Doc. 26-1.

[18] *See Niles v. Am. Airlines, Inc.*, 563 F. Supp. 2d 1208, 1213 (D. Kan. 2008) (quoting *Liebau v. Columbia Cas. Co.*, 176 F. Supp. 2d 1236, 1244 (D. Kan. 2001)); *Mike v. Dymon, Inc.*, No. 95-2405-EEO, 1996 WL 427761, at *2 (D. Kan. July 25, 1996) ("In pursuit of fairness and proper notice, the court generally summarily denies or excludes all arguments and issues first raised in reply briefs.").

[19] *See Ramirez v. Dep't of Corrs.*, 222 F.3d 1238, 1240 (10th Cir. 2000).

On April 14, 2018, agents and members of the Saline County Sheriff's Department entered a pasture owned by Plaintiff Beverly Fullen in which Plaintiffs maintained horses, cattle, and other animals.  The officers entered the pasture after Cowie reported that animals on the property were in danger, but they had no warrant.  While there, Defendants Lt. Scott Anderson and Deputy James Akin shot and killed a cow in labor.  Lt. Anderson and Deputy Akin thought that the cow was in distress, apparently not realizing that it was giving birth to a calf.  Cowie told or encouraged the officers to shoot the cow without consulting the owners or a veterinarian.

Four days later, on April 18, 2018, Plaintiffs Beverly Fullen and Matthew Fullen were arrested.  They were both held in the Saline County Jail for over 48 hours before being charged with multiple misdemeanors in connection with allegedly false allegations of animal cruelty. Cowie, acting under the authority of the City, attempted to get Beverly Fullen and Matthew Fullen to assign ownership of their animals to Saline County by threatening them each with $60,000 bonds.  Despite their refusal, and without justification, the animals were taken from the pasture and from Beverly Fullen's home.  In total, 189 animals were seized.

Some of the animals seized, including several horses and a dog, belonged to Beverly Fullen's daughter, Plaintiff Melissa Fullen.  Although Melissa Fullen was at her mother's house at the time of the seizure, the officers did not ask for permission to take her animals.  The officers placed 11 stud horses belonging to Melissa Fullen together in one small pen at her mother's house.  The officers later moved the horses to a pen with rough stock bulls in it.  The bulls gored and injured the horses, and one horse died after suffering a traumatic blow to the abdomen.  Moreover, the health of Melissa Fullen's dog deteriorated while in the "government's" care.[20]  Unnecessary surgery was performed on her dog, and at least in part due

---

[20] Because Plaintiffs use the term "government" in the Petition, that is the term the Court uses in reciting the factual allegations contained therein.

to the government's inadequate care, the surgery resulted in paralysis.  Melissa Fullen's animals were not returned to her until after February 24, 2020.

Plaintiffs allege that Matthew and Beverly Fullen were maliciously prosecuted at the insistence of City personnel.  "It was intended by the City and County to charge [$132,000 in] restitution," which Plaintiffs believe included expenses charged to the City by the individuals who took care of the animals.[21]  Plaintiffs further allege that the care provided by the government, in part through the actions of Crowther, was grossly inadequate and caused significant injury and harm to some of the animals.  Melissa Fullen spent a significant amount of time and money nursing her animals back to health, which cost somewhere between $50,000 and $100,000.  And some animals—including cattle and horses valued at around $28,000 and $25,000, respectively—died while in, or as a result of, the government's care.

Plaintiffs allege the following in the final two paragraphs of the Petition:

> 13.     As a direct and proximate result of the wrongful actions of the defendants Salina, the Sheriff, the employees, agents and the other individual defendants, plaintiffs Matthew Fullen and Beverly Fullen were wrongfully and maliciously prosecuted, animals and property were wrongfully and unlawfully seized and, in the case of the animals, were injured, and the defendants caused other losses and damage to the claimants which was significant and generally described above.
>
> 14.     Defendants, jointly and/or severally, deprived Plaintiffs of their rights secured by the Fourth Amendment to the United States Constitution as incorporated and applied to the states through the Fourteenth Amendment.[22]

Plaintiffs originally filed this action in the Saline County District Court on January 4, 2021, and the Salina Defendants later removed under 28 U.S.C. §§ 1441 and 1446.  Cowie and Crowther consented to removal.

---

[21] Doc. 5-1 at 3 ¶ 10.

[22] *Id.* at 5 ¶¶ 13–14.

III.    **Analysis**

As an initial matter, Plaintiffs do not separately label causes of action or claims for relief in the Petition.  Drawing all reasonable inferences from Plaintiffs' allegations, the Court construes the Petition as asserting a state-law claim for negligence as well as the following Fourth Amendment claims under 42 U.S.C. § 1983: (1) false arrest; (2) malicious prosecution; (3) unlawful search and seizure in connection with the April 14, 2018 warrantless entry into the pasture and killing of a cow in labor; and (4) unlawful search and seizure in connection with the April 18, 2018 entry into the pasture and Beverly Fullen's home and the seizure of 189 animals owned by Plaintiffs.[23]  Plaintiffs fail to specify, in either the Petition or the response brief, which claims are asserted against which Defendants or which factual allegations correspond with which theories of relief.[24]  For purposes of the motions to dismiss, the Court construes the Petition as asserting all the § 1983 claims against the Salina Defendants and Cowie, and only the negligence claim against Crowther.

Plaintiffs fail to indicate whether they are suing Sheriff Soldan in his individual or official capacity.  An official-capacity claim against Sheriff Soldan "is the same as a suit against the municipality."[25]  Where, as here, "the complaint fails to specify the capacity in which the government official is sued," the Court looks to "the substance of the pleadings and the course of the proceedings in order to determine whether the suit is for individual or official liability."[26]  Here, Sheriff Soldan asserts a qualified immunity defense, which suggests he construes the

---

[23] Although Plaintiffs do not cite § 1983 in the Petition, they do not need to.  *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) ("[N]o heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim.").

[24] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (explaining that Fed. R. Civ. P. 8(a)(2) requires a plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))).

[25] *Patel v. Hall*, 849 F.3d 970, 978 (10th Cir. 2017) (citation omitted).

[26] *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993).

Petition as suing him in his individual capacity.[27]  At the same time, Plaintiffs do not seek punitive damages, which are available only in individual-capacity suits, and the Petition refers to Sheriff Soldan by his official title.[28]  Viewing the Petition in the light most favorable to Plaintiffs, the Court construes it as asserting § 1983 claims against Sheriff Soldan in both his individual and official capacities.

In their joint motion to dismiss, the Salina Defendants assert that: (1) the statute of limitations bars all of Plaintiffs' § 1983 claims except the malicious prosecution claims;[29] (2) Sheriff Soldan, Lt. Anderson, and Deputy Akin are entitled to qualified immunity; and (3) the Petition fails to state a plausible claim for municipal liability against the City.  The Salina Defendants' reply brief raises several new arguments in support of dismissal.  It is well-established, however, that the Court does not consider arguments raised for the first time in a reply brief.[30]

Cowie moves to dismiss all claims asserted against her based on the statute of limitations and qualified immunity.  Finally, Crowther moves to dismiss the Petition because Plaintiffs fail to state a claim against him for negligence under Kansas law.  Plaintiffs filed a consolidated response brief opposing the three motions, which includes a request for leave to amend should the Court find the Petition deficient.

---

[27] *See id.*

[28] *See id.*

[29] The Salina Defendants initially also moved to dismiss Beverly Fullen's and Matthew Fullen's § 1983 malicious prosecution claims based on the statute of limitations.  In their reply brief, however, the Salina Defendants withdraw that motion and concede these claims are timely.

[30] *See Lynch v. Barrett*, 703 F.3d 1153, 1160 n.2 (10th Cir. 2013) (citing *Iqbal v. Holder*, 693 F.3d 1189, 1195 n.4 (10th Cir. 2012)); *see also United States v. Murray*, 82 F.3d 361, 363 (10th Cir. 1996).  For example, the Salina Defendants argue for the first time in their reply brief that Beverly Fullen's § 1983 malicious prosecution claim should be dismissed because the prosecution did not terminate in her favor.  The Salina Defendants didn't raise this argument in their opening brief, so the Court declines to address it.  The Salina Defendants also waited until their reply brief to ask the Court to dismiss the official-capacity claims against Sheriff Soldan to the extent any are asserted.  Because the Salina Defendants didn't raise this issue in their opening brief, it is not properly before the Court.

The Court addresses each basis for dismissal, as well as Plaintiffs' request for leave to amend, in turn below.

## A.      The Statutes of Limitations

The Salina Defendants argue that the statute of limitations bars all of Plaintiffs' § 1983 claims except the malicious prosecution claims.  Cowie also seeks to dismiss the § 1983 claims asserted against her as time-barred.  Although the statute of limitations is generally an affirmative defense, a court may resolve statute of limitations questions on a Rule 12(b)(6) motion to dismiss "when the dates given in the complaint make clear that the right sued upon has been extinguished."[31]  In such a case, the plaintiff bears the burden of showing "a factual basis for tolling the statute."[32]

The timeliness of claims brought under § 1983 is governed by a mix of federal and state law.[33]  Federal courts apply the forum state's statute of limitations for personal injury actions to § 1983 claims.[34]  State law also governs questions of tolling, unless state tolling rules would "defeat the goals" of § 1983.[35]  Federal law, however, determines when § 1983 claims accrue.[36]  In Kansas, the statute of limitations for personal injury actions is two years.[37]  And under federal law, § 1983 claims generally accrue "when the plaintiff knows or has reason to know of the

---

[31] *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

[32] *Id.*

[33] *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose.").

[34] *Id.*; *see also Myers v. Koopman*, 738 F.3d 1190, 1194 n.2 (10th Cir. 2013).

[35] *Hardin v. Straub*, 490 U.S. 536, 539 (1989).

[36] *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019) (quoting *Wallace*, 549 U.S. at 388).

[37] K.S.A § 60-513(a)(4); *see also Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) ("[T]he appropriate statute of limitations for § 1983 actions arising in Kansas is two years, under Kan. Stat. Ann. § 60-513(a)(4).").

injury which is the basis of the action."[38]  "[I]t is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue,"[39] and "[t]he cause of action accrues even though the full extent of the injury is not then known or predictable."[40]

The Salina Defendants and Cowie both contend that Plaintiffs' § 1983 claims accrued on April 14, 2018, the day that agents and members of the Saline County Sheriff's Department entered the pasture and killed a cow by shooting it.  At the latest, they contend, the claims accrued on April 18, 2018, the day Beverly Fullen and Matthew Fullen were arrested, Cowie attempted to get Plaintiffs to assign ownership of the animals to the County, and 189 animals were seized from the pasture and Beverly Fullen's home.  They argue that the statute of limitations thus expired no later than two years later, on April 18, 2020; however, Plaintiffs did not file the Petition until January 2021.[41]

Plaintiffs respond that Melissa Fullen's unlawful seizure claim accrued not when her animals were seized on April 18, 2018, but when her animals were returned to her on February 24, 2020.  Regardless, Plaintiffs argue, all their § 1983 claims are timely because, effective March 19, 2020, the Kansas Supreme Court suspended all state statutes of limitations in light of the COVID-19 pandemic.

---

[38] *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005) (quoting *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993)).

[39] *Baker*, 991 F.2d at 632.

[40] *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1216 (10th Cir. 2014) (alteration omitted) (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007)).

[41] The Salina Defendants clarify in their reply brief that they believe Beverly Fullen's and Matthew Fullen's § 1983 unlawful arrest claims accrued "either at the point of arrest on April 18, 2018 or after they arraigned and were released on bond 48 hours later," so the statute of limitations on that claim expired no later than April 20, 2020.  Doc. 26 at 4.

1.      **Accrual**

The Tenth Circuit has explained that claims arising out of the actions of officers, "such as . . . search and seizure, are presumed to have accrued when the actions actually occur."[42]  In arguing that Melissa Fullen's unlawful seizure claim did not accrue until her animals were returned to her, Plaintiffs appear to invoke the "continuing violation" doctrine.  The Tenth Circuit has not yet decided whether the continuing violation doctrine applies to § 1983 claims.[43] The Court assumes "[f]or the sake of argument," as the Tenth Circuit has, that it does.[44]  That said, the doctrine is triggered "by continual unlawful acts, not by continual ill effects from the original violation."[45]  The doctrine does not apply when the injury is "definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress."[46]  In the § 1983 context, federal courts have widely rejected the assertion that the continued retention of property constitutes a continuing violation for statute of limitations purposes.[47] The injury arises from the unlawful seizure of the property—the retention of that property is merely a consequence of the seizure.[48]

---

[42] *Johnson*, 925 F.2d at 1301.

[43] *See Colby v. Herrick*, 849 F.3d 1273, 1280 (10th Cir. 2017).

[44] *Id.*; *see also, e.g.*, *Vasquez v. Davis*, 882 F.3d 1270, 1277 (10th Cir. 2018).

[45] *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011) (quoting *Parkhurst v. Lampert*, 264 F. App'x 748, 749 (10th Cir. 2008)).

[46] *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1237 (10th Cir. 2001) (quoting *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1431 (10th Cir. 1996)).

[47] *See Colby v. Herrick*, No. 14-01860-MSK-KLM, 2016 WL 878302, at *3 (D. Colo. Mar. 7, 2016) (collecting cases), *aff'd & remanded*, 849 F.3d 1273 (10th Cir. 2017); *see also Turentine v. City of Chicago*, No. 13-5218, 2014 WL 866509, at *3 (N.D. Ill. Mar. 4, 2014) (collecting cases).

[48] *See Shannon v. Recording Indus. Ass'n of Am.*, 661 F. Supp. 205, 211 (S.D. Ohio 1987); *see also Johnson v. Cullen*, 925 F. Supp. 244, 248–50 (D. Del. 1996) ("Although plaintiffs were deprived of their property until it was returned to them, that was the continual ill effect of the original act of seizure."); *Herrin v. Dunham*, No. 05-10245, 2008 WL 2718802, at *7 (E.D. Mich. July 10, 2008) ("The plaintiffs' argument that their claim did not accrue until their property was returned, albeit in a damaged state, or when the state court ordered the return, must be rejected.  It is the illegal seizure that triggered this claim, even though the effects of those police actions may have continued into the future.").

The Court finds that Melissa Fullen's unlawful seizure claim accrued when the seizure occurred.  The Petition alleges that officers seized her animals on April 18, 2018, and she was there when it happened.  Thus, although Melissa Fullen was deprived of her animals until a much later date and could not have predicted the full extent of the injury, her unlawful seizure claim accrued that day.

Accordingly, the two-year statute of limitations on Melissa Fullen's unlawful seizure claim began to run on April 18, 2018.  And because Plaintiffs seem to dispute only the date on which Melissa Fullen's unlawful seizure claim accrued, the Court assumes for purposes of resolving the motions to dismiss that the two-year statute of limitations on the remaining § 1983 claims at issue began to run in April 2018 as well, as asserted by the Salina Defendants and Cowie.  Plaintiffs filed their Petition on January 4, 2021—well over two years later.  Thus, absent tolling, Plaintiffs' Fourth Amendment claims for false arrest, unlawful search, and unlawful seizure brought under § 1983 are untimely.

## 2. Tolling

Plaintiffs contend that a Kansas tolling rule saves their otherwise time-barred § 1983 claims.  Specifically, they point out that, effective March 19, 2020, the Kansas Supreme Court suspended all state statutes of limitations in response to the COVID-19 pandemic in Kansas Supreme Court Administrative Order No. 2020-PR-016, as amended by Kansas Supreme Court Administrative Order 2020-PR-32.  The Kansas Supreme Court did not order the statutes of limitations to resume until April 15, 2021, with certain exceptions.[49]  On that day, "a person shall have the same number of days to comply with the deadline or time limitation as the person had

---

[49] *See* Admin. Order No. 2021-PR.20 (Kan. Mar. 30, 2021).

when the deadline or time limitation was extended or suspended."[50]  Plaintiffs argue that the Kansas Supreme Court's pandemic-related administrative orders apply to their § 1983 claims, and thus render them timely.

The Salina Defendants and Cowie reply that the Kansas Supreme Court's administrative orders suspending the state statutes of limitations do not apply in federal court.  The Salina Defendants assert that, "[j]ust as state law tolling provisions do not toll the federal statute of limitations, the state administrative order tolling the state law statutes of limitation should not toll the federal statute of limitations."[51]  In the Salina Defendants' and Cowie's view, this Court should look to its own administrative orders, none of which tolled the statutes of limitations during the COVID-19 pandemic.

This argument misses the mark.  There is no federal statute of limitations for claims brought under § 1983.[52]  As noted above, state law therefore determines "[n]ot only the length of the limitations period, but also 'closely related questions of tolling and application,' . . .  in § 1983 actions."[53]  Federal courts apply the state's tolling rules unless doing so would defeat § 1983's goals,[54] which include compensation for those injured by a deprivation of federal rights and deterrence to prevent future abuses of power.[55]  Thus, the Court applies Kansas's tolling rules unless it determines that they are contrary to § 1983's goals.

---

[50] K.S.A. § 20-172(d)(1).

[51] Doc. 26 at 6.

[52] *Hardin v. Straub*, 490 U.S. 536, 538 (1989); *see also Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014) ("The text of § 1983 does not contain a statute of limitations.").

[53] *Varnell*, 756 F.3d at 1212 (quoting *Wilson v. Garcia*, 471 U.S. 261, 269 (1985)).

[54] *Hardin*, 490 U.S. at 539; *see also Johnson v. Garrison*, 805 F. App'x 589, 593 (10th Cir. 2020).

[55] *Robertson v. Wegmann*, 436 U.S. 584, 590, 590–91 (1978); *see also Berry v. City of Muskogee*, 900 F.2d 1489, 1503 (10th Cir. 1990).

By virtue of the administrative orders issued by the Kansas Supreme Court in response to the COVID-19 pandemic, Kansas's tolling rules include a toll of state statutes of limitations from March 19, 2020 through April 14, 2021.  Application of that tolling rule does not defeat § 1983's compensation and deterrence goals, neither of which the Salina Defendants and Cowie address.  Rather, it advances these goals by giving plaintiffs "ample time to pursue [their] claims during a global pandemic."[56]  The Court therefore applies Kansas's pandemic-related tolling rule in this case and finds that it allows Plaintiffs' otherwise time-barred § 1983 claims to proceed.[57]  The Salina Defendants' and Cowie's motions to dismiss on statute of limitations grounds are denied.

## B.      Qualified Immunity

Sheriff Soldan, Lt. Anderson, Deputy Akin (collectively, "Officers"), and Cowie argue that qualified immunity shields them from liability on all § 1983 claims asserted against them in their individual capacities.  The doctrine of qualified immunity "protects government officials from suit for civil damages if their conduct does not violate clearly established statutory or constitutional rights."[58]  "Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified

---

[56] *Bonilla v. City of New York*, No. 20-1704, 2020 WL 6637214, at *2 (E.D.N.Y. Nov. 12, 2020) (finding New York Executive Order No. 202.8, which tolled state statutes of limitations in response to the COVID-19 pandemic, applicable to § 1983 claims).

[57] At least one circuit court has considered the effect of such a pandemic-related administrative order on the statute of limitations in § 1983 actions, although only in an unpublished decision.  *See Jones v. Kirchenbauer*, –F. App'x–, No. 21-1123, 2021 WL 2395906, at *1 n.4 (3d Cir. June 11, 2021) (per curiam).  In *Jones*, the Third Circuit noted that the Delaware Supreme Court's administrative orders issued in response to the COVID-19 pandemic extended the statute of limitations on the plaintiff's § 1983 claims.  *Id.*  But it agreed with the district court that the § 1983 claims were nonetheless untimely, as the plaintiff filed his complaint "after the expiration of the COVID-19-related extensions provided by the Delaware Supreme Court."  *Id.*

[58] *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) ("The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011))).

immunity."[59]  "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment."[60]  At the motion to dismiss stage, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness."[61]  The court considers: (1) "whether the facts that a plaintiff has alleged make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct."[62]

Once the defense of qualified immunity is adequately raised, the plaintiff bears the burden of showing that the defendant is not entitled to qualified immunity.[63]  The court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[64]  "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."[65]

To overcome a defendant's assertion of qualified immunity, the plaintiff must allege facts that show the defendant, through personal participation, caused a violation of the plaintiff's clearly established constitutional rights.[66]  Allegations of "personal participation in the specific

---

[59] *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).

[60] *Id.* (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)).

[61] *Id.* (internal quotation marks omitted) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

[62] *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011)).

[63] *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).

[64] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[65] *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

[66] *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013).

constitutional violation complained of [are] essential,"[67] because § 1983 imposes liability for a defendant's "own individual actions."[68]  "[A]lthough the requirement of personal participation, including the question of supervisory liability, is a component of liability under § 1983," § 1983 liability and qualified immunity often "travel hand-in-hand, and when they do, [the court] consider[s] their substantive components together."[69]  Justice Thomas's dissenting opinion in *Hope v. Pelzer*[70] "articulates the principle well":

> In conducting qualified immunity analysis, . . . courts do not merely ask whether, taking the plaintiff's allegations as true, the plaintiff's clearly established rights were violated.  Rather, courts must consider as well whether each defendant's alleged conduct violated the plaintiff's clearly established rights.  For instance, an allegation that Defendant A violated a plaintiff's clearly established rights does nothing to overcome Defendant B's assertion of qualified immunity, absent some allegation that Defendant B was responsible for Defendant A's conduct.[71]

The court thus properly incorporates the personal participation requirement into the qualified immunity analysis.[72]

Here, the Officers and Cowie argue they are entitled to qualified immunity because Plaintiffs fail to allege that they personally participated in any of the alleged violations of Plaintiffs' constitutional rights.  Before addressing whether, as to each § 1983 claim, Plaintiffs have sufficiently alleged the personal participation of the Officers and Cowie in the asserted

---

[67] *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011); *see also Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.").

[68] *Pahls*, 718 F.3d at 1225 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

[69] *Id.* at 1227; *see also Dodds v. Richardson*, 614 F.3d 1185, 1193–94 (10th Cir. 2010).

[70] 536 U.S. 730 (2002).

[71] *Pahls*, 718 F.3d at 1227 (alteration in original) (quoting *Hope*, 536 U.S. at 751 n.9 (Thomas, J., dissenting)); *see also Dodds*, 614 F.3d at 1194 (quoting with approval this same language from Justice Thomas's dissent in *Hope*).

[72] *Pahls*, 718 F.3d at 1227.

constitutional violations, the Court separately considers whether Sheriff Soldan is entitled to qualified immunity for failure to allege his personal participation.

### 1. Sheriff Soldan

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."[73]  To plead supervisory liability, a plaintiff must allege: "(1) personal involvement; (2) causation; and (3) state of mind."[74]  A supervisor is personally involved when there is "an 'affirmative link' between the supervisor and the constitutional violation."[75]  The plaintiff can show this affirmative link by alleging that "'the [supervisor] promulgated, created, implemented[,] or possessed responsibility for the continued operation of a policy,' or 'the establishment or utilization of an unconstitutional policy or custom,' provided the policy or custom resulted in a violation of the plaintiff's constitutional rights."[76]

While Plaintiffs name Sheriff Soldan as a Defendant, the Petition fails to identify which claim or claims are asserted against him.  The Petition does not contain any factual allegations describing his conduct; it merely identifies him as the Sheriff of Saline County.  Sheriff Soldan cannot, however, be sued on a theory of respondeat superior.  To the extent Plaintiffs intend to a rely on a supervisory liability theory, the Petition fails to identify any specific policies over which Sheriff Soldan possessed responsibility that led to the alleged constitutional violations.  Because Plaintiffs have not alleged the personal participation of Sheriff Soldan in any of the asserted constitutional violations, Plaintiffs fail to state a viable § 1983 claim against him, and he

---

[73] *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

[74] *Keith v. Koerner*, 843 F.3d 833, 838 (10th Cir. 2016).

[75] *Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019) (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014)).

[76] *Id.* (alterations in original) (first quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); and then quoting *Dodds*, 614 F.3d at 1199).

is entitled to qualified immunity.  The Court therefore dismisses all § 1983 claims asserted

against Sheriff Soldan in his individual capacity.

### 2.     False Arrest and Malicious Prosecution Claims

The Court next addresses whether the Officers and Cowie are entitled to qualified

immunity on Beverly Fullen's and Matthew Fullen's false arrest and malicious prosecution

claims.  In the Tenth Circuit, state law provides the starting point for analyzing Fourth

Amendment claims for malicious prosecution and false arrest brought under § 1983.[77]  To bring

either claim within the ambit of § 1983, however, a plaintiff must demonstrate, in addition to the

elements of the state law, that their "Fourth Amendment right to be free from unreasonable

search and seizures has been violated."[78]  Under Kansas law, plaintiffs asserting a false arrest

claim must show they were "unlawfully caused to be arrested by the defendants, and, though it is

not necessary that the arrest was directly ordered by the defendants, it must appear that they

either instigated it, assisted in the arrest, or by some means directed, countenanced or encouraged

it."[79]  A warrantless arrest is constitutional if the officer has probable cause to arrest the

plaintiff.[80]

Unlike false arrest, "malicious prosecution concerns only detention after the institution of

process."[81]  Under Tenth Circuit caselaw, a § 1983 malicious prosecution claim includes the

following elements: "(1) the defendant caused the plaintiff's continued confinement or

---

[77] *Jackson v. N.M. Pub. Def.'s Off.*, 361 F. App'x 958, 964 (10th Cir. 2010) (first citing *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154 (10th Cir. 2001); and then citing *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001)).

[78] *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007) (malicious prosecution); *Trimble v. Park Cnty. Bd. of Comm'rs*, No. 99-1426, 2000 WL 1773239 at *3 (10th Cir. Dec. 4, 2000) (false arrest).

[79] *Douglass v. Garden City Cmty. Coll.*, No. 20-2076-KHV, 2021 WL 2338247, at *5 (D. Kan. June 8, 2021) (quoting *Thompson v. Gen. Fin. Co.*, 468 P. 2d 269, 280 (Kan. 1970)).

[80] *See Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).

[81] *Wilkins v. DeReyes*, 528 F.3d 790, 798 (10th Cir. 2008).

prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."[82]

Plaintiffs allege in the Petition that Beverly Fullen and Matthew Fullen "were arrested," then were "held in the Saline County jail for over 48 hours prior to being charged with multiple misdemeanors in connection with false allegations of animal cruelty," and then "were maliciously prosecuted at the insistence of City personnel."[83]   Plaintiffs claim that, "[a]s a direct and proximate result of the wrongful actions of the defendants Salina, the Sheriff, their employees, agents and the other individual defendants, plaintiffs Matthew Fullen and Beverly Fullen were wrongfully and maliciously prosecuted."[84]

These allegations are insufficient to make out viable § 1983 claims for false arrest and malicious prosecution against any Defendant, and thus do not survive assertions of qualified immunity.  The Petition is riddled with allegations in the passive voice and makes collective and conclusory allegations unsupported by specific factual allegations.  The Tenth Circuit has stressed that "it is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim."[85]  Given that requirement, a "plaintiff's facile, passive-voice showing that his rights 'were violated' will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that

---

[82] *Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017) (quoting *Wilkins*, 528 F.3d at 799).

[83] Doc. 5-1 at 2–3 ¶¶ 5, 10.

[84] *Id.* at 5 ¶ 13.

[85] *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532–33 (10th Cir. 1998)); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008); *see also Walker v. Mohiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020) (stating that *Pahls* and *Robbins* establish that collective and generalized allegations are "insufficient to overcome an assertion of qualified immunity at the motion-to-dismiss stage").

'defendants' infringed his rights."[86]  Thus, to make out viable § 1983 claims and overcome

assertions of qualified immunity, Plaintiffs must do more than assert that "their rights 'were

violated' or that 'defendants,' as a collective and undifferentiated whole, were responsible for

those violations."[87]

Plaintiffs' failure to make a "more particularized, defendant-specific" showing both

"dooms" the false arrest and malicious prosecution claims and entitles the Officers and Cowie to

qualified immunity.[88]  The Court therefore dismisses Beverly Fullen's and Matthew Fullen's

§ 1983 claims for false arrest and malicious prosecution.

### 3.  Unlawful Search and Seizure Claims

The Court also considers whether the Officers and Cowie are entitled to qualified

immunity on Plaintiffs' unlawful search and seizure claims for failure to allege personal

participation.  The Fourth Amendment protects "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures."[89]  "For a

search or seizure to be reasonable, it must ordinarily be supported by a warrant based on

probable cause" unless an exception to the warrant requirement applies.[90]  As with all claims

arising under § 1983, a defendant must be personally involved to be held liable for a violation of

a plaintiff's Fourth Amendment rights to be free from unreasonable searches and seizures.[91]

---

[86] *Pahls*, 718 F.3d at 1226.

[87] *A.M. v. Holmes*, 830 F.3d 1123, 1163 (10th Cir. 2016) (quoting *Pahls*, 718 F.3d at 1128).

[88] *See Pahls*, 718 F.3d at 1128.  Because the Court finds the Officers and Cowie are entitled to qualified immunity on the malicious prosecution and false arrest claims for failure to allege personal participation, it does not address their alternative arguments in support of qualified immunity as to these claims.

[89] U.S. Const. amend. IV.

[90] *United States v. Chavez*, 985 F.3d 1234, 1240 (10th Cir. 2021) (citing *United States v. Ventresca*, 380 U.S. 102, 106–07 (1965)).

[91] *See Pahls*, 718 F.3d at 1225.

Plaintiffs assert violations of their Fourth Amendment rights in connection with (1) the April 14, 2018 warrantless entry into the pasture and killing of a cow in labor, and (2) the April 18, 2018 entry into the pasture and Beverly Fullen's home and seizure of 189 animals owned by Plaintiffs.  As explained below, Plaintiffs have alleged enough facts to show that Lt. Anderson, Deputy Akin, and Cowie each personally participated in the asserted Fourth Amendment violations on April 14, 2018, but not April 18, 2018.

### a.  April 14, 2018

Plaintiffs' Petition alleges that on April 14, 2018, "agents and members of the Saline County Sheriff's Department" entered a pasture owned by Beverly Fullen without a warrant to investigate the conditions of Plaintiffs' animals because Cowie reported that they were in danger.[92]  The Petition further alleges that, while there, Lt. Anderson and Deputy Akin shot and killed a cow they believed was in distress after Cowie "told or encouraged" them to shoot it without consulting Plaintiffs or a veterinarian.[93]  The cow was giving birth to a calf.

These allegations, although sparse, sufficiently allege the personal participation of Lt. Anderson, Deputy Akin, and Cowie in the search of the pasture and seizure of the cow.  The Petition alleges that Lt. Anderson and Deputy Akin both entered the pasture without a warrant. While the Petition does not specifically state that Cowie entered Plaintiffs' pasture, the allegation contained in the Petition that she told or encouraged Lt. Anderson and Deputy Akin to shoot the cow supports a plausible inference that she was there.

The Petition also specifically alleges that Lt. Anderson and Deputy Akin both shot and killed the cow.  Although Cowie is not alleged to have personally shot the cow, "direct

---

[92] Doc. 5-1 at 2 ¶ 3.

[93] *Id.* ¶ 4.

participation is not necessary" for liability to arise under § 1983.[94]  "Any official who 'causes' a citizen to be deprived of her constitutional rights can also be held liable."[95]  "The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights."[96]  Here, given that Cowie allegedly "told or encouraged" Lt. Anderson and Deputy Akin to kill the cow,[97] "it strains credulity" that she "would not have known these clearly intentional acts would lead directly" to the seizure of the cow.[98]  Accordingly, the Court concludes that Plaintiffs have plausibly alleged the personal participation of Lt. Anderson, Deputy Akin, and Cowie in the April 14, 2018 search of the pasture and seizure of the cow.

That Plaintiffs sufficiently allege the personal participation of Lt. Anderson, Deputy Akin, and Cowie does not end the qualified immunity inquiry.  As explained above, in resolving a motion to dismiss based on qualified immunity, the Court asks (1) whether the facts alleged by the plaintiffs make out a violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct.[99]  Here, the Salina Defendants and Cowie assert broadly in their respective opening briefs that the Petition does not contain "any factual allegations" that the Officers or Cowie violated Plaintiffs' constitutional rights.[100]  But they do not offer any argument in support of that conclusory assertion with respect to the unlawful search

---

[94] *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990) (quoting *Conner v. Reinhard*, 847 F.2d 384, 396 (7th Cir. 1988)); *see also Poolaw v. Marcantel*, 565 F.3d 721, 732 (10th Cir. 2009).

[95] *Snell*, 920 F.2d at 700 (quoting *Conner*, 847 F.2d at 396–97); *see also Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) (quoting *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006)).

[96] *Poolaw*, 565 F.3d at 732 (quoting *Snell v.* 920 F.2d at 700); *see also Mink v. Knox*, 613 F.3d 995, 1002 (10th Cir. 2010) (explaining that *Poolaw* and *Snell* set forth "the legal standard of liability for defendant's personal participation, not for supervisory liability").

[97] Doc. 5-1 at 2 ¶ 4.

[98] *Poolaw*, 565 F.3d at 733.

[99] *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).

[100] Doc. 12 at 7; Doc. 15 at 7.

and seizure claims.  They also do not address whether the Fourth Amendment rights at issue were clearly established.  Although "the burden to overcome qualified immunity is entirely [the] plaintiff's, that burden only arises when the doctrine has been 'adequately presented.'"[101]  It is well-settled that "[a]rguments inadequately briefed in the opening brief are deemed waived."[102]

Nonetheless, for the first time in their reply brief, the Salina Defendants argue (1) that Lt. Anderson and Deputy Akin did not violate Plaintiffs' Fourth Amendment rights when they entered the pasture because the entry was privileged, and (2) that Lt. Anderson and Deputy Akin did not violate Plaintiffs' Fourth Amendment rights when they killed the cow because they believed it was in distress and that its owners were guilty of animal cruelty.  These arguments may or may not have merit, but the Salina Defendants waived these arguments by failing to raise them in their opening brief, and the Court therefore declines to consider them.  For these reasons, the Court denies without prejudice the Salina Defendants' and Cowie's motions to dismiss Plaintiffs' Fourth Amendment claims stemming from the April 14, 2018 search and seizure.

### b.      April 18, 2018

As for the searches and seizures that occurred a few days later, on April 18, 2018, Plaintiffs do not allege enough facts to support the personal participation of any Defendant.  All the Petition alleges is that, after Beverly Fullen and Matthew Fullen refused to assign ownership of the animals to Saline County, "the animals were taken from the pasture as well as from Beverly Fullen's home on Country Club Road without justification.  A total of 189 animals were seized."[103]  This general, passive-voice description of the events provides no factual basis for the

---

[101] *Halik v. Darbyshire*, No. 20-CV-01643-PAB-KMT, 2021 WL 4305011, at *5 (D. Colo. Sept. 22, 2021) (quoting *Tillmon v. Douglas Cnty.*, 817 F. App'x 586, 589 (10th Cir. 2020)).

[102] *Adler v. Wal-Mart stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998); *see also United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.").

[103] Doc. 5-1 at 2 ¶ 6.

Court to decipher which individual Defendants personally participated in the April 18, 2018 searches and seizures.  Lt. Anderson, Deputy Akin, and Cowie are entitled to qualified immunity, and the Court dismisses Plaintiffs' Fourth Amendment claims stemming from the April 18, 2018 searches and seizures.

### C.    Municipal Liability

Finally, the Salina Defendants seek dismissal of all claims brought under § 1983 against the City.  They argue that Plaintiffs have not alleged an underlying constitutional violation by Cowie and, even if they have, Plaintiffs do not allege a failure to train, supervise, or discipline or a pattern of similar unconstitutional behavior.

The Supreme Court has made clear that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."[104]  "[I]n other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."[105]  Instead, "the government as an entity" may be held liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."[106]  To plead municipal liability, a plaintiff must allege "1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged."[107]  In the Tenth Circuit, an official policy or custom may take one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized

---

[104] *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

[105] *Id.* at 691; *see also Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996) ("A municipality may not be held liable under 42 U.S.C. § 1983 simply because it employs a person who violated a plaintiff's federally protected rights.").

[106] *Monell*, 436 U.S. at 694.

[107] *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Hinton v City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).

by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.[108]

The Petition does not mention training, supervision, or discipline, nor does it allege any other prior incident of similar misconduct.[109] While a policy or custom supporting municipal liability may take another form, the Petition does not allege the existence of any City policy or custom. The Court therefore finds that Plaintiffs have failed to state a claim of municipal liability against the City. The Court also finds that Plaintiffs tacitly concede that they have failed to state a § 1983 claim against the City by failing to respond to the Salina Defendants' arguments.[110] Thus, all § 1983 claims asserted against the City are dismissed.

### D.     Crowther's Motion to Dismiss

The Court now turns to Crowther's motion to dismiss. Crowther assumes in his motion that Plaintiffs assert only a state law claim for negligence against him, and he moves to dismiss because the Petition fails to allege that he owed Plaintiffs a duty of care. Plaintiffs respond that they have sufficiently alleged a duty of care to support a negligence claim under Kansas law. Plaintiffs do not indicate that they seek to assert any other claims against Crowther.

---

[108] *Crowson v. Washington Cnty.*, 983 F.3d 116, 1184 (10th Cir. 2020) (quoting *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019)).

[109] *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." (internal quotations marks and citation omitted)).

[110] *See West v. City of Parsons*, 983 F. Supp. 1027, 1036 (D. Kan. 1997) (finding that the plaintiff "apparently concedes" that the City and County cannot not be held liable under § 1983 because "he d[id] not respond to [their] arguments").

To state a negligence claim under Kansas law, a plaintiff must allege sufficient facts to plausibly show: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; (3) a causal connection between the duty breached and the plaintiff's injury; and (4) damages suffered by the plaintiff.[111]  Here, Crowther argues that the Petition fails to allege a duty of care owed by him to Plaintiffs.  The Court agrees.  The Petition merely alleges that "Crowther acted individually but was also at times material hereto an agent of Salina and/or the Sheriff."[112]  And the only factual allegation in the Petition against Crowther appears in paragraph 11, which states that "[t]he care provided by the government, in part through the actions of defendant James Crowther, was grossly inadequate."[113]  The Petition fails to allege facts from which the Court can infer the existence of a duty.  The Court therefore grants Crowther's motion to dismiss.

### E.      Plaintiffs' Request for Leave to Amend

Plaintiffs request leave to amend should the Court find the Petition deficient.  Under Fed. R. Civ. P. 15(a), if a pleading is one to which a responsive pleading is required, the plaintiff may amend once as a matter of course within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."[114]  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."[115]  Plaintiffs did not amend the Petition as a matter of course.

---

[111] *Shirley v. Glass*, 308 P.3d 1, 6 (Kan. 2013).

[112] Doc. 5-1 at 1 ¶ 2.

[113] *Id.* at 4 ¶ 11.

[114] Fed. R. Civ. P. 15(a)(1)(B).

[115] Fed. R. Civ. P. 15(a)(2).

D. Kan. Rule 15.1 provides that a party seeking leave to amend must "set forth a concise statement of the amendment . . . sought" and "attach the proposed pleading."[116]  While leave to amend should be freely given "when justice so requires,"[117] this liberal policy is not absolute. Fed. R. Civ. P. 7(b) "requires a request for relief to be made by a motion that (1) is in writing, (2) 'states with particularity the grounds for seeking the order,' and (3) specifies the relief sought."[118]  Recognizing the importance of Rule 7(b), the Tenth Circuit has held that "normally a court need not grant leave to amend when a party fails to file a formal motion."[119]

Plaintiffs have not formally moved for leave to amend their Petition or submitted a proposed amended petition, as required by D. Kan. Rule 15.1.  Nor have Plaintiffs specified the factual allegations they would add that would correct the defects in their Petition.  Instead, Plaintiffs merely tacked to their response a general curative request for leave to amend as an alternative to dismissal.  Such "a bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based."[120]  Plaintiffs' informal request for leave to amend is therefore denied without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant James Crowther's Motion to Dismiss (Doc. 10) is **granted**.  The Salina Defendants' Motion to Dismiss (Doc. 11) and Defendant Vanessa Cowie's Motion to Dismiss (Doc. 14) are **granted in part and denied in part**.  Plaintiffs' § 1983 Fourth Amendment claims stemming from the April 14, 2018 search

---

[116] D. Kan. R. 15.1(a)(1)−(2).

[117] *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 687, 706 (10th Cir. 2014) (quoting Fed. R. Civ. P. 7(b)(1)).

[118] *Id.*

[119] *Id.* (quoting *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999)).

[120] *Id.* (first citing *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989); and then citing *Calderon*, 181 F.3d at 1185–87).

and seizure remain against Defendants Lt. Scott Anderson, Deputy James Akin, and Vanessa Cowie.  The motions are otherwise granted.

**IT IS FURHTER ORDERED** that Plaintiffs' request for leave to amend is **denied** without prejudice.

**IT IS SO ORDERED.**

Dated: September 30, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
